Judge:     Christopher M. Alston
Chapter    Chapter 7

# IN THE UNITED STATES BANKRUTPCY COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON AT SEATTLE

In re:

OCEAN SUSHI, INC.,

                  Debtor.

EDMUND J., WOOD, solely in his capacity
as Chapter 7 Trustee of the bankruptcy
estate of Ocean Sushi, Inc.,

        Plaintiff,

       v.

MIKA, INC.

and

WT NATION CORPORATION,

and

XO CAFÉ, INC.

and

KAI MING WAH and TSUI WAH CHENG,
Husband and wife and the marital
community composed thereof,

and

XUE LIN and JANE DOE LIN, Husband and
wife and the marital community
composed thereof,

and

YUNG BEN TUN and JANE DOE TUN,
Husband and wife and the marital
community composed thereof,

Case No. 19-13394-CMA

Adv. Proceeding No.

COMPLAINT

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

and

JIA BO DONG and JOHN DOE DONG, Wife and husband and the marital community composed thereof,

Defendants.

## I.      INTRODUCTION

Edmund J. Wood, solely in his capacity as Chapter 7 Trustee of the bankruptcy estate of the Ocean Sushi, by and through his undersigned counsel, complains as set forth below.

## II.      JURISDICTION AND VENUE

2.1      This is an action to avoid fraudulent transfers and to compel turnover of property of the estate.

2.2      This is a "core proceeding" pursuant to 28 U.S.C. § 157(b)(2)(F),(H) AND (O).

2.3      This Court has jurisdiction to hear this complaint pursuant to 28 U.S.C. § 157(a) and (b), 1334(a) and (b), and 11 U.S.C. §§ 105, 542, 544, 547 548, 550 and 551.

2.4      This matter has been referred to the Bankruptcy Judges of this District pursuant to General Rule 7 of the Rules for the United States District Court for the Western District of Washington.

2.5      Venue is proper under 28 U.S.C. § 1409.

## III.      PARTIES

3.1      <u>Debtor</u>. Ocean Sushi, Inc. ("the Debtor") filed a voluntary Chapter 7 petition on September 12, 2019 ("Petition Date").

3.2      <u>Trustee</u>. Edmund J. Wood was appointed as the Chapter 7 Trustee ("Trustee") for the case on September 12, 2019. The Trustee is authorized to bring this action pursuant to

COMPLAINT

§§ 105, 542, 544, 547, 548, 550 and 551 of the Bankruptcy Code and does so solely in his capacity as Trustee for the Ocean Sushi estate.

3.3 <u>Defendant Mika, Inc</u>. Defendant Mika, Inc. was incorporated in the State of Washington on January 10, 2017. The Registered agent is Kai Ming Wah at 1426 324th Street Ste B-201, Federal Way, Washington, 98003. Kai Ming Wah is listed as the sole Governor. It operates under the business name Engimono Ramen and Dim Sum at 1426 S. 324th Street, Ste 201, Federal Way, WA 98003.

3.4 <u>Defendant WT Nation Corp.</u> WT Nation Corp. was incorporated in the State of Washington on October 13, 2015. The Governors are Kai Ming Wah and Xue Lin. It was dissolved on October 1, 2019.

3.5 <u>Defendants Kai Ming Wah and Tsui Wah Cheng.</u> Kai Ming Wah and Tsui Wah Cheng are husband and wife and any act done by one was done for the benefit of the marital community. Kai Ming Wah was a former employee of the Debtor.

3.6 <u>Defendants Xue Lin and Jane Doe Lin</u>. Xue Lin and Jane Doe Lin are residents of the State of Washington. They are husband and wife, and any act done by one was done for the benefit of the marital community. Upon information and belief, the Plaintiff alleges that Xue Lin is a relative of Chang De Lin and Hui Ru Dong, the principals of the Debtor and as such are insiders of the Debtor.

3.7 <u>XO Café, Inc</u>. XO Café, Inc was incorporated on September 12, 2013 in the State of Washington. Kai Ming Wah was the President, Yung Ben Tun was the treasurer and vice-president, and Jia Bo Dong was listed as the director. XO Café, Inc. was administratively dissolved on February 3, 2018.

3.8 <u>Defendants Yung Ben Tur and Jane Doe Tur</u>. Yung Ben Tur and Jane Doe Tur and husband and wife and residents of the State of Washington. Any act done by one was

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

done for the benefit of the marital community. They were officers of XO Café, Inc, which is now dissolved.

3.9 <u>Defendant Jia Bo Dong and John Doe Dong</u>. Jia Bo Dong and John Doe Dong are wife and husband and residents of the State of Washington. Any act done by one was done for the benefit of the marital community. They were officers of XO Café, Inc, which is now dissolved.

## IV.    STATEMENT OF FACTS

**Ocean Sushi, Inc.**

4.1 Ocean Sushi, Inc was incorporated in the State of Washington on August 18, 2007. The sole member was listed as Chang De Lin. The original Registered Agent was listed as Diana Long with a contact email address of <u>Fidelityaccounting168@Yahoo.com</u>. Diane Long was the Debtor's accountant at Fidelity Tax Services ("Fidelity").

4.2 The Debtor did business as Mika Japanese Buffet.

4.3  The Principal of the Debtor, Chang De Lin ("Mr. Lin"), is married to Hui Ru Dong ("Ms. Dong").

4.4 On June 27, 2007, Mr. Lin and Ms. Dong entered into a lease with Harsch Investment Properties, LLC. ("Landlord")  for commercial real property located at 1426 S. 324th Street, Federal Way, Washington 98003 ("Federal Way Property").

4.5 On February 5, 2008, Mr. Lin, Ms. Dong, and the Landlord executed an Assignment and Assumption of Lease assigning the lease to the Debtor. The address used for notices for Mr. Lin, Ms. Dong, and the Debtor was 5580 Martin Way East, Lacey, Washington, 98516.

4.6 Prior to September 30, 2018, the Debtor had assets of approximately $950,000, for which it took depreciation deductions on its IRS Form 4562. The assets included

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

furniture, food prep equipment, POS system, leasehold improvements, remodeling, signage, equipment, coolers and other restaurant equipment.

4.7    Kai Ming Wah has worked for the Debtor since at least 2013. He was in control of the Debtor. He was a signatory on the bank account. Kai Ming Wah and Mr. De Lin were both the managers of the Debtor. As such, Kai Ming Wah is an insider of the Debtor as defined in § 101(31)(B)(ii).

**Ocean Sushi Tax Problems**

4.8    On October 27, 2016, the Debtor was notified by the State of Washington Department of Revenue that it was being audited for the period of January 1, 2013, to September 30, 2016 and that the audit was scheduled for February 13, 2017.

4.9    In 2017 the IRS started an audit of the Debtor's 2014 and 2015 tax returns.

4.10    Sometime prior to August 28, 2018 the Debtor was notified that it owed the IRS $266,476.86 for the tax year 2016. The Debtor did not respond. On August 28, 2018, the IRS sent the Debtor a Notice of Levy in the amount  of $266,476.86.

4.11    The Internal Revenue has filed a proof of claim for the following years in the following amount for unpaid 1120 taxes:

| Year | Amount Owing | Status |
|------|-------------|--------|
| 2014 | $179,089.66 | General unsecured claim |
| 2015 | $222,494.98 | General unsecured claim |
|      | $107,975.37 | Interest on general unsecured claim |
| 2016 | $190,888.59 | §507(a)(8) claim |
| 2017 | $41,989.55 | §507(a)(8) claim |
| 2018 | $39,827.10 | §507(a)(8) claim |
|      | $56,210.00 | penalties on §507(A)(8) claims |

COMPLAINT

TOTAL:          $838,475.25

4.12    At some point in time Mr. Lin decided to sell the Mika Japanese Buffet business. Mr. Lin testified at the Debtor's § 341 meeting the business was sold because of the tax problems, and the IRS told him he had to sell it.

4.13    Upon information and belief, the Plaintiff alleges that Mr. Lin did not hire a business broker or advertise the business for sale. Rather, he sold the business to a friend. The friend was Kai Ming Wah.

**Sale of the Debtor's Business**

4.14    On or about September 30, 2018, the Debtor and Mika, Inc. entered into a Sales Agreement for the purchase of the business upon these terms:

A.      Payment of $2,000 to the Debtor;

B.      Mika's Assumption of the lease on the Federal Way Property.

C.      The Debtor's security deposit of $17,126.00 did not have to be returned to the Debtor, but would remain as the security deposit for Mika, with Mika having to pay an additional $2,699.00 as an additional security deposit;

D.      Assumption of a debt on inventory purchased from B&L Trading in the amount of $87,217.37[1];

E.      Assumption of a debt for plumbing issues associated with the lease. There is no statement of how much that debt was or if it was ever paid.

4.15    B&L Trading, LLC is incorporated in the State of Washington and operates under that name as well as the names Big Sea Trading, LLC and Long Chang Trading.

4.16    Upon information and belief the Plaintiff alleges that the Debtor did not owe B & L Trading $87,217.37.

---

[1] The Sales Agreement says a list is attached, but there is no list attached.

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

**Mika, Inc.**

4.17     Ocean Sushi appears never to have closed; instead, it was taken over by Mika, Inc. Mika continued to operate Ocean Sushi under the Mika Buffet name until late 2020, when it registered the trade name of Engimono Ramen & Dim Sum. The restaurant has operated under the Engimono Ramen & Dim Sum name since late 2020.

4.18     The transfer of all of the Debtor's assets, including its $17,126 security deposit to Mika, Inc. deepened the Debtor's insolvency by reducing to zero or nearly to zero the value of the Debtor's remaining assets.   The Debtor did not receive reasonably equivalent value in exchange for the transfer of all of its assets.

4.19     Based upon the timing of the transfer to Mika, which occurred approximately one month after the Debtor was notified of the results of the IRS audit, the transfer of all or substantially all of the Debtor's assets to Mika, Inc was done with actual intent to hinder, delay and/or defraud the Internal Revenue Services for the purpose of escaping liability.

4.20     The Debtor and Mika do not operate as separate or distinct business entities. The Debtor ceased business operations after the transfer of assets to Mika.

4.21     Mika, Inc. continues to operate the assets, equipment, goodwill, name, equipment, menus and business concept of the Debtor. Mika, Inc operates out of the same location as the Debtor operated from and uses the same phone number and website.

**WT Nation Corp Transfer**

4.22     On September 29, 2016, the Debtor made check number 5622 payable to WT Nation in the amount of $9,800.00. The Debtor's books and records do not show any obligation that the Debtor owed to WT Nation at the time of the transfer. The Debtor did not receive reasonably equivalent value in exchange for the transfers.  The transfer is carried on the Debtor's books as a shareholder loan.

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

4.23     As set out above, the Governors of WT Nation are Kai Ming Wah—the governor of Mika, Inc.--and Xue Lin. Xue Lin, a relative of Chang De Lin. WT Nation operates as a restaurant under the name Engimono Ramen, located at 300 NE Northgate Way, Seattle, WA 98125.

4.24     Upon information and belief, Mr. Lin, the Debtor's member, is a silent partner or owner of WT Nation.

**XO Café, Inc. Transfers.**

4.25     On March 4, 2014, the Debtor made check number 3050 payable to XO Café in the amount to of $9,500.00. The Debtor did not receive reasonably equivalent value in exchange for this transfer.

4.26     On March 18, 2014, the Debtor made check number 3074 payable to XO Café in the amount of $15,000.00. The Debtor did not receive reasonably equivalent value in exchange for this transfer.

4.27     On April 30, 2014, the Debtor made check #3196 payable to XO Café, Inc., in the amount of $6,000.00. The Debtor did not receive reasonably equivalent value in exchange for this transfer.

4.28     The Balance Sheet for 2014 and 2015 do not list any loans to XO Café.

4.29     The Debtor's December 31, 2016, Balance Sheet references, as an asset, a loan to XO Café in the amount of $24,800. The December 31, 2017, Balance Sheet also lists the Loan as an asset.

4.29     Upon information and belief the loan to XO Café was not and has not been repaid.

4.30     The Debtor's bankruptcy schedules do not disclose an account receivable owed to it by XO Café.

COMPLAINT

4.31    XO Café was incorporated on September 12, 2013. An Amended Annual Report was filed on November 17, 2015 which lists Kai Ming Wah as the President with an address in Federal Way. Yung Ben Tun was listed as the treasurer and vice-president and Jia Bo Dong was listed as the director, with an address of 3900 Cameron Drive, NE, Lacey, WA 98516. This address is also  the address of Mr. Lin and Ms. Dong.

4.32    When a corporation has been administratively dissolved under RCW 23.95.610 remedies available to or against it shall survive in the manner provided in RCW 23.03.300 and the directors of the corporation shall hold the title to the property of the corporation as trustees for the benefit of its creditors and members. The Plaintiff is seeking to recover the loan amount of $30,500 from XO Café and its directors

**T**ransfers to benefit Kai Ming Wah and Tsui Wah Cheng

4.33     Tsui Wah Cheng is believed to use the name Jenny Cheng. She worked for the Debtor in the accounting department and was the contact person for the Debtor's accountants, Fidelity Tax Services.

4.34    On July 29, 2016, Kai Ming Wah and Tsui Wah Cheng, an unmarried couple at the time, purchased real property located at 1707 SW 340th Street, Federal Way, WA 98023 from J.L. Monarch for $515,950.00. On July 11, 2016, the Debtor made check #5413 payable to J.K. Monarch in the amount of $5,661.00. This payment was not in payment of an obligation of the Debtor but was made for the benefit of Kai Ming Wah and Tsui Wah Cheng. The Debtor did not receive reasonably equivalent value in exchange for this transfer.

4.35    On or about December 23, 2017, Tsui Wah Cheng entered into a Lease with BMW Financial Services for the lease of a 2018 BMW 530I. The base price of the BMW was $59,150.00. The monthly payments on the lease were $767.59 after a cash payment of $6,000.

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

4.36    Upon information and belief the Plaintiff alleges that the Debtor made the $6,000 cash payment either directly or through funds withdrawn from its accounts. The Debtor did not receive reasonably equivalent value in exchange for this transfer.

4.37    The Debtor made nine monthly payments to BMW from January 2018 through August 2018, and one payment in 2019, for the Tsui Wah Cheng lease. All nine payments were in the amount of $767.59. The Debtor paid a total of $6,908.31 in lease payments for the benefit of Defendants Tsui Wah Cheng and Kai Ming Wah, in addition to the $6,000 deposit. The Debtor did not receive reasonably equivalent value in exchange for this transfer.

4.38    The BMW was insured through State Farm. The Debtor made six payments to State Farm for the BWM totaling $2,417.56 for the benefit of Defendants Tsui Wah Cheng and Kai Ming Wah. The Debtor did not receive reasonably equivalent value in exchange for this transfer.

4.39    The total the Debtor paid toward the BMW Lease was at least $15,325.87.

4.40    The Debtor made payments for automobiles totaling $10,780.52, exclusive of the payments to BMW set forth above. The Debtor did not receive reasonably equivalent value in exchange for the payments.  To the extent the payments were made for the benefit of Defendants Wah and/or Cheng they are liable to the estate for those transfers.

4.41    The Debtor made payments to various airlines totaling $17,839.90. The Debtor did not receive reasonably equivalent value in exchange for the payments.  To the extent the transfers were made for the benefit of the Defendants Wah and/or Cheng, they are liable to the estate for those transfers.

4.42    The Debtor made payments for rent to several apartment complexes totaling $62,927.34. The Debtor did not receive reasonably equivalent value in exchange

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

for the payments. To the extent these transfers were made for the benefit of Defendants Wah and/or Cheng they are liable to the estate for those transfers.

4.43    The Debtor made transfers to Bank of America in payment of a credit card in an amount of at least $14,412.80. Upon information and belief, the Plaintiff alleges that the Debtor had no obligation to Bank of America on the credit card and did not receive reasonably equivalent value in exchange for the transfers to Bank of America. To the extent these transfers were made for the benefit of Defendants Wah and/or Cheng they are liable to the estate for those transfers.

4.44    The Debtor withdrew $78,000 of cash from its bank account. To the extent the cash withdrawals were by or for the benefit of Defendants Wah and/or Cheng they are liable to the estate for those transfers

4.45    Upon information and belief the Plaintiff alleges that there were other transfers made to or for the benefit of Defendants Wah and/or Cheng.

4.46    All transfers referenced above are hereinafter referred to as "Transfers".

**INSOLVENCY**

4.47    In 2014, the Debtor was unable to pay its debts as they came due, which is evidenced by the outstanding obligation of $179.089.66 owed to the IRS.

4.48    By 2015 the Debtor was insolvent. The Debtor's 2015 tax returns show that at the beginning of 2015 there was an outstanding shareholder loan of $210,518. During 2015, $153,118.00 of that loan was repaid. At the end of 2015, the amount owing on the shareholder loan was $57,400.

4.49    In 2015 the assets of the Debtor were listed as $442,690 and the liabilities were listed as $64,296.00 However, the liabilities did not include the unpaid 2014 corporate tax obligation owed to the IRS of $170,089.66 nor the 2015 IRS tax obligation in the amount of $222,494.98, which, when combined with the $64,296 total $465,880.64.

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

4.50    The Debtor's 2016 tax return shows that the Debtor owed $265,087 in taxes but it had only paid $36,817 and thus owed the IRS $228,419, including an estimated tax penalty of $149.00. The Debtor's 2016 Form 1120, Schedule L lists unpaid obligations for sales tax in the amount of $22,343, wages in the amount of $28,421, payroll taxes of $15,299 and the IRS obligation of $228,270 for total unpaid obligations of $294,333. This does not include the unpaid amount owed for 2014 and 2015 of $401,584.64, not including interest. The Debtor was insolvent and/or was not paying its debts as they became due in 2016.

4.51    The Debtor's 2017 tax returns show that the Debtor owed total tax of $38,936 and had made payments during that year of zero, and with the estimated penalty of $1,244 it owed $40,180.00. The Debtor's 2017 tax return shows other current liabilities of $324,152 which includes $30,457 of sales tax, $53,843 of wages, $23,346 of payroll tax and $226,506 in income payable. This does not include the $40,180 owed for 2017, nor the $401,584.64 owed for 2014 and 2015 corporate taxes. In 2017 the Debtor was insolvent and/or not paying its creditors, including the IRS, as its debts became due.

4.52    The Debtor's 2018 tax return shows that it owed income tax of $8,031 and had paid zero, owed $278 in a tax penalty for unpaid 2018 corporate taxes of $8,309. The Debtor's tax return shows assets of $200,717 and liabilities of $1,040,132.

4.53    The Debtor was not only insolvent, but it was also not paying its debts as they became due.

### V.  FIRST CAUSE OF ACTION FRAUDULENT CONVEYANCES
### 11 U.S.C. §544 AND RCW 19.40.
### (DEFENDANTS  MIKA, WT NATION, , WAH/CHENG,)

5.1    Paragraphs IV and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

5.2    The Transfers made by the Debtor to Defendants listed above are avoidable pursuant to RCW 19.40.010 et. seq.

5.3    The Transfers by the Debtor to the Defendants were made with actual intent to hinder, delay or defraud creditors of the Debtor. Specifically, the Debtor was aware that making transfers to these Defendants would hinder, delay or impair its ability to pay obligations owed to its legitimate creditors, including the approximately $840,000.00 it owed to the IRS.

5.4    The Transfers by the Debtor to the Defendants were made without the Debtor receiving reasonably equivalent value in exchange for the Transfers.

5.5    The Transfers by the Debtor to the Defendants caused the Debtor to engage or thereafter engage in business for which the remaining assets of the Debtor were unreasonably small in relation to the business or transactions.

5.6    The Transfers by the Debtor to the Defendants should have caused the Debtor to believe that it would incur debts beyond its ability to pay as they became due.

5.7    The Debtor was insolvent on the date of each and every one of the Transfers. Alternatively, the Debtor became insolvent as a result of the Transfers.

**VI. SECOND CAUSE OF ACTION:  FRAUDULENT TRANSFERS
UNDER § 548 OF THE BANKRUPTCY CODE
(DEFENDANTS  MIKA, WT NATION, , WAH/CHENG,)**

6.1    Paragraphs I-V and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

6.2    The Transfers set forth in paragraph IV above were made to and/or for the benefit of the Defendants.

6.3    The Debtor did not receive reasonably equivalent value in exchange for the Transfers.

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

6.3     The Debtor was insolvent on the date of each of the Transfers.

6.4     The Transfers to the Defendant were made with actual intent to hinder, delay and defraud creditors to whom the Debtor was indebted before or after the date of the Transfers. Specifically, the Debtor was aware that it would hinder, delay or impair its ability to pay obligations owed to its legitimate creditors, such as the IRS.

6.5     The Transfers to the Defendant are therefore avoidable pursuant to 11 U.S.C. §548.

6.6     The Plaintiff may recover the value of the Transfers under 11 U.S.C. §550.

## VII.     THIRD CAUSE OF ACTION FOR AVOIDANCE OF FRAUDULENT TRANSFERS UNDER FEDERAL LAW (ALL DEFENDANTS)

7.1     Paragraphs I-VI and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

7.2     As described above, the Debtor improperly and fraudulently made Transfers to these Defendants.

7.3     At the time of the Transfers set forth above the Debtor and its principals knew it had significant outstanding liabilities owed to the IRS.

7.4.    The Transfers were made to or for the benefit of the Defendants.

7.5     The Debtor made the Transfers with the actual intent to hinder, delay, or defraud the creditors or future creditors of the Debtor.

7.6     The Transfers set forth above were to or for the benefit of insiders of the Debtor.

7.7     The Debtor did not retain possession or control of the Transfers after the Transfers were made.

COMPLAINT

Wood & Jones, PS
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

7.8     The Transfers were not disclosed but rather concealed from the public and Debtor's creditors because the Debtor is a privately held company.

7.9     Before the Transfers were made, the Debtor had been sued or threatened with suit to recover its unpaid federal taxes.

7.10    The Debtor concealed assets from its present and future creditors through the Transfers.

7.11    At the time the Transfers were made, or thereafter, the United States of America was (or later became) a creditor of the Debtor.

7.12    The United States of America (the "United States") is a creditor of the Debtor holding a Section 507 priority claim against the Debtor in the amount of $272,705.24, an unsecured claim against the Debtor in the amount of $401,585.03 and a §726(a)(4) penalty claim in the amount of $164,085.87. The IRS would have a right under applicable non-bankruptcy law, including without limitation, 28 U.S.C. §3304(b)), to avoid the Transfers.

7.13    The Debtor was effectively insolvent at the time of the Transfers or became insolvent after the Transfers because of the hundreds of thousands of dollars owed to the IRS.

7.14    The Transfers occurred shortly before or shortly after substantial debts were continuously being incurred with respect to Debtor's unpaid tax liabilities.

7.15    At the time of the Transfers, the Debtor would not be able to pay its debts and liabilities as they became due because of its debts owed to the IRS and its secured creditors.

7.16    At the time of the Transfers, the sum of the Debtor's debts including its tax liabilities was greater than all of the Debtor's assets.

7.17    As a result of the Transfers, the Debtor and its creditors have been harmed and damaged.

7.18    The Defendants benefited from the fraudulent conveyance of the Transfers.

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA 98103
(206) 623-4382

7.19    Under 11 U.S.C. §544(b)(1) a trustee may "step into the shoes" of an unsecured creditor to recover transfers such actual creditor would have been able to recover save for the filing of the bankruptcy case.

7.20    A trustee's action under § 544(b) is timely if the unsecured creditor's claim may be timely brought under the applicable law including, but not limited to, 28 U.S.C. § 3306(b)(1), which provides that the United States may bring an action to avoid a transfer done with actual intent to hinder, delay, or defraud a creditor within two years after the transfer was, or reasonably could have been, discovered by the claimant. This claim is timely pursuant to 11 U.S.C. § 546(a).

7.21    The fraudulent nature of the Transfers was not and could not reasonably have been discovered by the Debtors' creditors, including without limitation, the United States, or the Plaintiff until after the Petition date.

7.22    Under 22 U.S.C. §544, a transaction that is voidable by a single, actual unsecured creditor may be avoided in its entirety, regardless of the size of the creditor's claim. In other words, even if the triggering creditor is owed only a nominal amount, the entire transfer can be avoided and used to satisfy claims of creditors.

7.23    Under 11 U.S.C. §§544(b), 550(a) and 551, 28 U.S.C. § 3304, and/or other applicable law, Plaintiff is entitled to avoid and recover the Transfers or value of the distributions transferred to the Defendant, with interest, and preserve the recovered Transfers for the benefit of the estate.

7.24    Plaintiff is entitled to a judgment against the Defendant and any beneficiaries and subsequent transferees for the amount of all of the Transfers to Shareholder Defendants, in an amount to be determined at trial, plus interest.

## VIII.  FOURTH CAUSE OF ACTION:  TURNOVER OF PROPERTY OF THE ESTATE 11 U.S.C. § 542

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

**(ALL DEFENDANTS)**

8.1     Paragraphs I-VII and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

8.2     The Defendants are in possession, custody or control of property, as defined in §541, which belongs to this bankruptcy estate.

8.3     The property in this case are any funds or other consideration generated by the Property, as described in detail above in Section IV.

8.4     The Trustee could use the funds to pay the obligations of the Debtor.

### IX.  FIFTH CAUSE OF ACTION: PREFERENTIAL TRANSFERS 11 U.S.C. §547 OF THE CODE (DEFENDANTS MIKA, WAH AND CHENG)

9.1     Paragraphs I-VIII and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

9.2     The Transfers made by the Debtor to the Defendants constitute transfers by the Debtor of an interest in property.

9.3     The Transfers by or for the benefit of the Debtor to Defendants were made for or on account of an antecedent debt owed by the Debtor to Defendants.

9.4     Kai Ming Wah is an insider of the Debtor as set forth in paragraph 101(31)(B)(ii) of the Bankruptcy Code.

9.5     Some of the transfers referred to in Paragraph IV, above, were made by or for the benefit of the Debtor to Defendant Kai Ming Wah within one year of the Petition Date.

9.6     At the time of the Transfers referred to in Paragraph IV, above, the Debtor was insolvent.

9.7     The Transfers referred to in Paragraph IV above, enabled the Defendants  to receive more than they would have received if the case were a case under Chapter 7 of Title 11

COMPLAINT

of the United States Code, the Transfers had not been made, and the Defendants received payment of their debts to the extent provided by the provisions of Title 11 of the United States Code.

## X. SIXTH CAUSE OF ACTION:  ACCOUNTING FOR USE
## OF PROPERTY OF THE ESTATE 11 U.S.C. § 542
## (ALL DEFENDANTS)

10.1.    Paragraphs I-IX and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

10.2.    Certain Defendants are in possession, custody or control of property of the estate that the Trustee may use, including but not limited to the proceeds realized from operating Mika, Inc.

10.3.    The Plaintiff is entitled to an accounting as to all funds through the use of property of the bankruptcy estate. The Plaintiff is further entitled to an accounting to determine what, if any, funds belonging to the Debtor have been diverted for the use and benefit of the Defendants and each of them.

10.4.    In the event the accounting demonstrates that funds have been received from the use of bankruptcy estate property, the Plaintiff is entitled to a money judgment against the Defendants or any of them responsible for the unlawful or improper disposition thereof.

## XI.  SEVENTH CAUSE OF ACTION:
## EQUITABLE SUBORDINATION OF CLAIMS
## (ALL DEFENDANTS)

11.1    Paragraphs I-X and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

11.2    To the extent that the Defendants have filed proofs of claim in this bankruptcy case, or have a claim, such claims are subject to equitable subordination, because (a) the Defendants have engaged in inequitable conduct; (b) the misconduct resulted in an injury to

COMPLAINT

the bankrupt's creditors or conferred an unfair advantage on the creditor; and (c) equitable subordination is not inconsistent with the provisions of the Bankruptcy Code.

11.3    Any claims of any nature, either pre or post-petition by the Defendants against the Debtor should be subordinated to the legitimate debts owed to general unsecured creditors of the debtor pursuant to 11 USC §510(c) and general equitable principles.

## XII.  EIGHTH CAUSE OF ACTION:  SUCCESSOR LIABILITY
### (DEFENDANT MIKA)

12.1    Paragraphs I-XI and all subsections thereof, are hereby repeated and incorporated as though fully set forth herein.

12.2    Lin and/or Wah caused the Debtor to transfer all or substantially all of the Debtor's assets to Mika, Inc, without adequate consideration.

12.3    The transfer caused the Debtor to become insolvent and/or was done in bad faith and/or was done with actual intent to hinder delay and defraud the creditors of the Debtor.

12.4    The transfer was a defacto merger, consolidation, purchase or acquisition of the Debtor's business and operations.

12.5    the Debtor and Mika do not operate as separate and distinct business entities. Mika, Inc is a mere continuation of  the Debtor and Mika continues to operate the restaurant using the assets, goodwill,  and equipment of the Debtor.

12.6    Mika is a successor entity to the Debtor. Mika, Inc., in turn, is liable for the debts and obligations of the Debtor including the $838,000 of IRS tax debt.

## XIII.  NINTH CAUSE OF ACTION: PRESERVATION OF AVOIDED TRANSFERS
### (ALL DEFENDANTS)

13.1    Sections I through X are hereby repeated and incorporated as though set forth herein.

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

13.2    Any and all transfers avoided under the claims for relief in this complaint are preserved for the benefit of the estate pursuant to 11 U.S.C. §§ 550 and 551.

## XIV. PRAYER FOR RELIEF

The Plaintiff asks for the following relief:

14.1    That the Court find the Transfers of the Debtor's property as set forth above constituted fraudulent transfers that should be avoided and award judgment to the Plaintiff pursuant to §§544(b), 548, 550(a), RCW 19.40. et. seq. and the FDCPA, including but not limited to 28 U.S.C. §3304.

Judgment should be awarded  under these causes of action to the Plaintiff against Defendants XO Café, Wah, Lin and Tun and Dong, as holders of XO Café's property, in the amount of $30,500 plus interest, plus whatever additional amounts are proven at trial;

Judgments should be awarded under these causes of action against Mika, Inc for the amount of the security deposit $17,126.00, plus interest, plus all profits made from the business;

Judgment should be awarded under these causes of action against WT Nation for $9,800, plus interest plus whatever additional amounts are proven at trial;

Judgment should be awarded against Defendants Wah and Cheng for  $20,986, plus whatever transfers they are liable for under ¶4.40-4.45 of the Complaint, plus whatever personal liability may flow from Wah's sole ownership of Mika, plus whatever additional amounts are proven at trial.

14.2    That the Court find the transfers of the Debtor's property as set forth above constitute preferential transfers pursuant to §547 of the Bankruptcy Code and award judgment against Defendants Mika, Wah and Cheng for the value of the Debtor's business, plus the security deposit of $17,126, plus any other transfer that are found during discovery to have

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382

been made within 1 year of the filing date, plus whatever additional amounts are proven at trial.

14.3    That the Court order turnover of Property of the estate against all Defendants for any  property in their possession or that was in their possession.

14.4    That the Court order an accounting for any income derived from the use of the Debtor's property against all Defendants.

14.5    That the Court  find that Mika, Inc is a successor in interest to the Debtor and award appropriate damages

14.6    A finding that all Transfers avoided are preserved for the benefit of the estate.

14.7    For equitable subordination of any claim the Defendants have against the Debtor.

14.8    That the Court enter an order consistent with this Complaint, and for such other relief as the Court deems just and equitable.

DATED this 10th day of September, 2021.

WOOD & JONES, P.S.

/s/ Denice E. Moewes
Denice E. Moewes, WSBA #19464
Attorney for Chapter 7 Trustee
Edmund J. Wood

*

COMPLAINT

**Wood & Jones, PS**
303 N 67th Street
Seattle, WA  98103
(206) 623-4382